MATTER OF ABREU-SEMINO

In Deportation Proceedings

A-11910724

*Decided by Board June 21, 1968*

Conviction of unlawful sale and unlawful possession of LSD in violation of 21 U.S.C. 331(q)(2) and 21 U.S.C. 331(q)(3), respectively, is not a conviction of a crime involving moral turpitude.

CHARGE:

Order: Act of 1952—Section 241(a)(4) [8 U.S.C. 1251(a)(4)]—Convicted of crime involving moral turpitude within five years of entry, to wit: unlawful possession and sale of LSD in violation of Title 21, sections 331(q)(2) and 331(q)(3) of U.S.C.

ON BEHALF OF RESPONDENT:
Toney, Rose & Guarisco, Esqs.
200 East College Avenue
Tallahassee, Florida 32301
(Brief submitted)

ON BEHALF OF SERVICE:
R. A. Vielhaber, Esq.
Appellate Trial Attorney

Henry J. Scroope, Jr., Esq.
Trial Attorney
(Brief submitted)

This case comes forward on certification from the special inquiry officer, who has found that the crime of which respondent was convicted does not involve moral turpitude, that respondent is, therefore, not deportable as charged, and has ordered the proceedings terminated.

Respondent is a 23-year-old divorced male alien, native and citizen of Cuba, who came to the United States in 1960 as a political refugee and who, on December 30, 1963, after a brief visit in Canada, was lawfully admitted to the United States for permanent residence, upon presentation of a nonquota immigrant visa.

On April 12, 1967, respondent was convicted in the United States District Court for the Northern District of Florida, on four counts of violating Title 21, U.S.C., two for unlawful sale and delivery of LSD, a depressant or stimulant drug, in violation of section 331(q) (2), and two for unlawful possession of LSD, in violation of section 331(q)(3). He was sentenced to one year each on the first two counts, the sentences to run consecutively; sentence was suspended on counts

775

three and four, with the direction that he be placed on probation for two years, to commence after termination of the sentence imposed on the first two counts. There is no evidence that respondent has ever been charged with or convicted of any other crimes.

Respondent having conceded that the above convictions relate to him, and there being no question that the drugs involved were not narcotics (see discussion of special inquiry officer at p. 3 of his opinion), the issue of his deportability rests on whether or not the crimes of which he was convicted involve moral turpitude. We hold, with the special inquiry officer, that they do not.

The prohibition we are here concerned with, upon unauthorized traffic in depressant and stimulant drugs, was enacted by Public Law 89-74; the legislative statement of purpose accompanying the proposed legislation and contained in Senate Report No. 337 (June 21, 1965, 89th Cong.), was as follows:

> The bill provides increased controls over the distribution of barbiturates, amphetamines, and other drugs having a similar effect on the central nervous system. *The controls are accomplished* through increased record-keeping and inspection requirements, through providing for control over intrastate traffic in these drugs because of its effect on interstate traffic, and *through making possession of these drugs (other than by the user) illegal outside of the legitimate channels of commerce.* The bill also increases the authority of the Department of Health, Education and Welfare over counterfeit drugs. * * * (Emphasis supplied.)

Further description of the purpose and intent of the legislation is in the law itself which, immediately after setting forth its title, goes on to state:

> Sec. 2. The Congress hereby finds and declares illicit traffic in depressant and stimulant drugs moving in or otherwise affecting interstate commerce: that the use of such drugs, when not under the supervision of a licensed practitioner, often endangers safety on the highways (without distinction of interstate and intrastate traffic thereon) and otherwise has become a threat to the public health and safety, *making additional regulation of such drugs necessary*, regardless of the intrastate or interstate origin of such drugs; that in order to make *regulation* and protection of interstate commerce in such drugs effective, *regulation* of intrastate commerce is also necessary because, among other things, such drugs, when held for illicit sale, often do not bear labeling showing their place of origin and because in the form in which they are so held or in which they are consumed a determination of their place of origin is often extremely difficult or impossible: and that *regulation* of interstate commerce without the *regulation* of intrastate commerce in such drugs, as provided in this Act, would discriminate against and adversely affect interstate commerce in such drugs. (Emphasis supplied.)

It is clear, therefore, that this is regulatory legislation. We have many times held that the violation of a regulatory, or licensing, or revenue provision of a statute is not a crime involving moral turpitude; *Matter of V—,* 1 I. & N. Dec. 293 (violation of Narcotic Drugs Im-

port and Export Act of 1909) ; *Matter of H—*, 1 I. & N. Dec 394 (violation of section 3281 of the Revised Statutes (26 U.S.C. sec. 1397(a) (1)), carrying on business of retail liquor dealer without having paid special tax required by law; *Matter of J—*, 2 I. & N. Dec. 99 (violation of 25 U.S.C.A. 241, sale of intoxicating liquor to a tribal Indian)[1]; *Matter of R—*, 4 I. & N. Dec. 644 (violation of Chapter 249 of the Criminal Code of the State of Washington, unlawfully disposing of narcotic drugs; see citation and discussion of cases, both administrative and judicial, on the question of whether such offenses involve moral turpitude, contained in this decision).

As we pointed out in *Matter of R—*, *supra*, moral turpitude normally inheres in the intent; *U.S. ex rel. Meyer v. Day*, 54 F.2d 336; *U.S. ex. rel. Shladzien v. Warden*, 45 F.2d 204. Thus, crimes in which evil intent is not an element, no matter how serious the act or how harmful the consequnces, do not involve moral turpitude. See Gordon and Rosenfield, *Immigration Law and Procedure*, secs. 4.14(b)–4.14e, for enumeration of specific examples of such crimes.

In the statute under consideration, intent is nowhere mentioned in defining the prohibited act; it is nowhere mentioned in describing the crimes charged in the four counts of the information. Although other sections of the statute describe acts in which fraud or intent to mislead must be shown, all that is required for conviction under sections 331(q) (2) and (q)(3), as we read the statute and the information, is the showing of possession, and sale, and the showing that the person charged with the violation is not within the classes authorized by statute to have posession or make a sale of the specified drugs. We concur with the special inquiry officer, upon examination of the purpose and applicable provisions of the statute, that the crimes therein defined and of which respondent was convicted, do not involve moral turpitude.

ORDER: It is ordered that the decision of the special inquiry officer certified to this Board for final action, be and the same is hereby sustained.

---

[1] In *Matter of Y—*, 2 I. & N. Dec. 600, where it was held that conviction of violation of section 4(1)(f) of the Dominion Opium and Narcotic Drug Act (Canada) for unlawful sale and possession of drugs *was* a crime involving moral turpitude, there were two specific pronouncements by judges of the Canadian courts that the statute violated was neither a licensing nor a revenue statute but had been enacted to prevent the commission of a crime and to punish criminals.